**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**JEFFREY L. CLEMENS,**                            CASE NO. 3:24 CV 1938

      Plaintiff,

      v.                                                            JUDGE JAMES R. KNEPP II

**UNITED STATES OF AMERICA, et al.,**

      Defendants.                                      **MEMORANDUM OPINION AND
ORDER**

**INTRODUCTION**

Currently pending before the Court are three Motions. First is a Motion to Dismiss filed by Defendants Danbury Township, Officer Michael Scherer, and Officer Michael Meisler ("Local Defendants"). (Doc. 9).[1] Second is a Motion to Dismiss filed by Defendants United States of America, Barbara Distel, Marc Kudley, and David Kasulones ("Federal Defendants"). (Doc. 11). Plaintiff did not file a stand-alone opposition brief to either. Instead, Plaintiff filed the third pending Motion requesting, among other things, the Court convert Defendants' Motions to Dismiss into motions for summary judgment. (Doc. 12). Jurisdiction is proper under 28 U.S.C. § 1331.

For the reasons discussed below, the Court grants in part and denies in part Plaintiff's Motion (Doc. 12), grants in part and denies in part the Federal Defendants' Motion (Doc. 11), and denies as moot the Local Defendants' Motion (Doc. 9). This case is dismissed.

---

1. After Local Defendants filed their Motion to Dismiss, Plaintiff voluntarily dismissed, with prejudice, all claims against Officer Meisler. *See* Docs. 18, 19.

**BACKGROUND**

Plaintiff filed what he describes as a "three-prong manifold [C]omplaint involving three distinct sets of [D]efendants and encompassing four peculiarly intertwined general events." (Doc. 3, at 27). Its relevant contents are summarized below.

The first set of events discussed regard certain encounters at the Marblehead, Ohio, Post Office beginning on May 13, 2023. *Id.* at 2. Plaintiff inquired about a Freedom of Information Act ("FOIA") request he mailed from that location to the Federal Bureau of Investigation, but was unable to speak with Barbara Distel, the Postmistress of the Marblehead Post Office. *Id.* at 2–3. Plaintiff returned multiple times in attempts to speak with Distel, and on May 17, 2023, he was successful. *Id.* at 3. After a short conversation, Distel called the police and complained of trespass. *Id.* at 3–5.

The Complaint then discusses "further follow-on events" from May 2023 through April 2024, which Plaintiff summarizes as "January and April 2024 secondary events at [the Marblehead Post Office] in attempts . . . to resolve the May 2023 events." *Id.* at 7, 27. Plaintiff claims he made "numerous" unsuccessful inquiries to the Postmaster of the Port Clinton Post Office in attempts to contact one of Distel's supervisors. *Id.* at 7. He also sent an "extensive narrative and complaint regarding the May 17, 2023[,] Marblehead incident" to the United States Postal Inspection Service's Cleveland office. *Id.* In late October 2023, Plaintiff's brother went to question Distel at the Marblehead Post Office, where he was asked to leave. *Id.* On January 26, 2024, Plaintiff himself returned to the Marblehead Post Office to question Distel regarding "background checks" he had done on Distel and her husband. *Id.* at 8. She called the police after exchanging "only a few words," and Plaintiff left the building. *Id.*

2

After "further research on Defendant Distel and her husband," Plaintiff decided to file a Form 95, and began seeking information to complete it.[2] *Id.* at 9. On April 13, 2024, Plaintiff once again went to the Marblehead Post office "to try and speak with a 'witness'" about the Form 95, but upon his arrival he was informed he was not allowed to be there. *Id.* at 9–10. Again, the Police were called. *Id.* at 10. Plaintiff went to the Marblehead Police Department on April 15, 2024, to retrieve a copy of the report from his April 13 visit to the post office but was told he could not get one because a "case" was open. *Id.* at 11. On April 22, 2024, Plaintiff was charged with two counts of criminal trespass. *Id.*

The next section of the Complaint discusses "further follow-on events" in June 2024, which Plaintiff summarizes as "encounters at a police department in Danbury [Township], Ohio by and through a follow-up to the [P]laintiff's encounters with the Marblehead [P]ostmaster that led to an April 2024 charging of [P]laintiff alleging criminal trespass." *Id.* at 11, 27. Therein, Plaintiff discusses both formal and informal communications between Distel and Meisler in April and June 2024, some of which were upsetting to Plaintiff. *Id.* at 11–12.

Plaintiff also discusses a public safety seminar at his place of work, conducted by Meisler, that he was prohibited from attending by a supervisor who "impl[ied] he could be fired," and made vague references to Plaintiff's interactions with Meisler. *Id.* at 14–15. Plaintiff met with his employer's CEO a few days later, learned the CEO was sent an email from Chief Meisler about Plaintiff's mental health, and was shown an excerpt of the employee manual stating: "Any employee who engages in criminal conduct . . . may be terminated." *Id.* at 15. The CEO asserted he did not intend to fire Plaintiff at that time. *Id.*

---

2. A Form 95 is an official form for filing claims of damages, injuries, or death against the United States Government under the Federal Tort Claims Act for negligence by a federal employee.

The Complaint next discusses "an October 2020 false and warrantless arrest and incarceration in Sandusky, Ohio." *Id.* at 27, 19–20.[3] This describes events leading to another arrest in October 2023. Plaintiff then claims Defendant Kasulones "caused" the 2020 charges against him, which were "dismissed" in April 2021.[4] *Id.* at 21.

Next, the Complaint discusses a 2021 FOIA request to the Department of Justice leading to Plaintiff's discovery that a Boston, Massachusetts deputy United States Marshal emailed Kasulones. *Id.* at 22. Plaintiff describes this Botson Marshal as having "played a key role in the arguable cover up of an in-court assault of the [P]laintiff at his [] sentencing in federal court by U.S. [M]arshal designees." *Id.* The Complaint then states "substantial circumstantial evidence" points to Distel having learned about Plaintiff's "Boston matters" through Defendants Kudley or Kasulones, or some other recipient of his February 2023 certified mailings, who "thus became an agent for their proxy prosecution of the [P]laintiff." *Id.*

The final substantive section of the Complaint is described as "relevant current ongoing events," and appears to consist of non-chronological theories regarding how people are connected and their communications regarding Plaintiff with each other. *Id.* at 24–27.

---

3. This appears to be the history leading to Plaintiff's FOIA requests, his subsequent April 2024 inquiry at the Marblehead Post Office, and the groundwork for the conspiracy he explicitly does not assert in this action. (Doc. 3, at 21–23, 27–28).
4. Plaintiff highlights he was interviewed by Kasulones and informed him he visited Santa Barbara to see a retired Beverly Hills detective, "make inquiries," and speak with someone named Anias. (Doc. 3, at 21). Plaintiff believed Anias was related to an Assistant United States Attorney who Plaintiff claims "promoted" his prosecution in Boston, Massachusetts. *Id.* at 16, 21. Plaintiff had suspicions Anias was connected with an agency Plaintiff previously sued, and details how he thinks said connection led to "a wrongful 2011 prosecution, conviction, and incarceration." *Id.* at 21. Plaintiff makes no claim these details are relevant to the instant case.

Following an extensive narrative of the above factual allegations, Plaintiff brings claims under three general causes of action: (1) Federal Tort Claims Act ("FTCA"), (2) *Bivens*, and (3) 42 U.S.C. § 1983.

As to the United States, Plaintiff alleges claims of intentional infliction of emotional distress, false arrest, false imprisonment, and malicious prosecution under the FTCA. *Id.* at 31. As to Defendants Distel and Kudley, in their individual capacities, Plaintiff claims they violated his First Amendment right to free speech and Fifth Amendment right to equal protection. *Id.* As to Defendant Kasulones, in his individual capacity, Plaintiff claims he violated his Fourth Amendment right against illegal seizure. *Id.* at 32. Finally, Plaintiff alleges violations of 42 U.S.C. § 1983, his First Amendment right to free speech, his Fourth Amendment right against illegal seizure, and his Fifth Amendment right to equal protection against Defendant Danbury Township. *Id.*

**DISCUSSION**

<u>Plaintiff's Motion to Convert</u>

In response to Defendants' Motions to Dismiss, Plaintiff filed a Motion to Convert the Motions to Dismiss into motions for summary judgment to allow time for discovery. (Doc. 12). This Motion contains multiple arguments and requests. Plaintiff first presents an argument about the proper parties to this case, embedding a request to dismiss certain parties and claims. *Id.* at 1–4. Second, he argues the Motions to Dismiss must be converted into motions for summary judgment based on documents Plaintiff deems inappropriate for consideration in connection with a dismissal motion. *Id.* at 1, 5–8. Third, Plaintiff substantively responds to arguments in Defendants' Motions to Dismiss. *See id.*; Doc. 17.

*Parties to This Action*

Plaintiff first asserts the only proper Defendants to this action are Distel and Kudley.[5] (Doc. 12, at 1). He suggests this Court has no jurisdiction to substantively decide either Motion to Dismiss as to any Defendants upon whom he did not serve process. *Id.* However, Plaintiff's failure to abide by the Federal Civil Rules does not eliminate this Court's jurisdiction over parties who voluntarily acquiesce thereto. *See Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550 (6th Cir. 1995) (noting a defense of lack of personal jurisdiction is waived by a *defendant's* failure to raise it in a motion to dismiss); *see also* Fed. R. Civ. P. 12(g)(2). However, *pro se* pleadings are construed liberally. *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008). And Plaintiff's request is essentially an embedded motion for this Court to voluntarily dismiss certain parties from the case, without prejudice. Local Defendants object to Plaintiff's contention that the unserved parties should be dismissed, but their argument appears based on the form of Plaintiff's proposal and their desire to have their Motion to Dismiss considered on the merits. (Doc. 14, at 1–5).

At this stage in the proceedings, Plaintiff is entitled under Rule 41 to voluntarily dismiss without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(A) ("[T]he plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."); *Aamot v. Kassel*, 1 F.3d 441, 444 (6th Cir. 1993) ("The Rule permits plaintiff to take such action 'at any time before service by the adverse party of an answer or motion for summary judgment, whichever first occurs.' Again, this language

---

5. Plaintiff's Motion contends that because he "chose" to not serve some Defendants with process, "they are not being prosecuted" and the Court's ruling on their Motions to Dismiss would be "inappropriate," "excessive," and "unnecessary." (Doc. 12, at 1). Plaintiff further questions why those Defendants spent any efforts on their Motions and suggests this Court should dismiss them without prejudice.

6

unambiguously requires a defendant, in order to make plaintiff put his money where his mouth is, to *serve* plaintiff with a summary judgment motion or an answer.").

Because no Defendant has served an answer or motion for summary judgment, the Court grants Plaintiff's Motion to the extent it requests voluntary dismissal of his claims against Defendants Danbury Township, United States of America, Michael Scherer, and David Kasulones without prejudice. As such, all of Plaintiff's claims under the FTCA[6] and § 1983[7] are dismissed.

*Conversion to Motions for Summary Judgment*

Plaintiff next attacks the admissibility of certain documents contained within the Defendants' Motions to Dismiss. *See, e.g.*, Doc. 12, at 4 ("To remind the reader, police reports are not 'evidence' or 'proof' nor do they constitute lawful written notice."). Plaintiff objects to the Court's consideration of documents attached to the Federal Defendants' Motion to Dismiss, claiming they are "highly inappropriate for a Rule 12 pleading." *Id.* at 5. But his only basis for this contention appears to be his personal beliefs and overt skepticism of the government. *See, e.g.*, *id.* ("What is to be considered and taken as true are the allegations of the *plaintiff*, and NOT . . . the self-serving, outlandishly false assertions, distortions, exaggerations, faux hysterical statements, fabrications, cherry-picked references [culled from unrevealed sources], musings and all-together dubious and at times vicarious recollections of prosecution witness Barb Distel and her post office and police cohorts.").

---

6. Claims under the FTCA may only be brought against the United States itself. *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990); 28 U.S.C. § 2674. As the United States is dismissed, no claim under the FTCA remains in the present case.

7. A cause of action under § 1983 may only be brought against an individual acting under the color of state law. *Ryan v. McDonald*, 191 F. Supp. 3d 729, 737 (N.D. Ohio 2016). Because the only remaining state actors are dismissed, so are any claims arising under § 1983.

But the documents' admissibility is immaterial. As discussed in greater detail below, this Court need not review or consider any such documents to analyze the remaining relevant arguments in Defendants' Motion to Dismiss. As a result, the Court denies Plaintiff's Motion to the extent it requests to convert Defendants' Motions to Dismiss to motions for summary judgment.

*Substantive Response*

Plaintiff states he does not formally respond to the Defendants' arguments, contending both Motions to Dismiss were "boilerplate case law" and made arguments to which he was unable to "debate or object." *Id.* at 4. But Plaintiff's disagreement with Defendants' arguments does not excuse him from the pleading requirements. And his Motion and reply brief do in fact respond to the relevant arguments discussed below.

Thus, Plaintiff's Motion to Convert is granted in part and denied in part. Specifically, Plaintiff's Motion is granted to the extent it seeks to voluntarily dismiss Defendants United States of America, David Kasulones, Michael Scherer, and Danbury Township. (Doc. 12, at 1). Plaintiff's Motion is denied in all other respects, but its substance and argument is considered in the Court's analysis of the Federal Defendants' Motion below.

Motion to Dismiss

Remaining in this case are Plaintiff's claims of constitutional violations by Federal Defendants Distel and Kudley in their individual capacities, commonly referred to as *Bivens* claims. Plaintiff claims Defendants Distel and Kudley, along with now-dismissed individuals, worked together to usurp his constitutional rights, specifically his First and Fifth Amendment rights, by: "(1) wrongfully barring him from a U.S. post office, (2) wrongfully barring him from all public buildings and places in Danbury Township, Ohio . . . (3) wrongly prosecuting him in a

court of law, and (4) terminating him from [his place of employment]." (Doc. 3, at 30). In their Motion to Dismiss, those Defendants[8] contend this Court lacks jurisdiction over those claims and alternatively argue Plaintiff's Complaint fails to state a claim upon which relief can be granted. Plaintiff responded to these arguments in his own Motion and Reply. *See* Docs. 12, 17.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). Where, as here, a defendant seeks dismissal under Rules 12(b)(1) and 12(b)(6) in the alternative, the Court must "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l. Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Thus, Defendants' argument as to subject matter jurisdiction is discussed first.

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884–85 (N.D. Ohio 2010). A facial attack "questions merely the sufficiency of the pleading," and "a district court takes the allegations in the complaint as true." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Without a *Bivens* claim to provide a federal cause of action, the Court lacks subject matter jurisdiction to further consider Plaintiff's claims. *Banks v. LaRose*, 2018 WL 1942195, at *3 (N.D. Ohio); *see also Blade v. U.S. Bankr. Ct.*, 109 F. Supp. 2d 872, 878 (S.D. Ohio 2000), *aff'd*, 22 F.

---

8. Any reference by the Court to "Defendants" hereinafter means Defendants Distal and Kudley.

App'x 487 (6th Cir. 2001) ("Since [the plaintiff] cannot bring a *Bivens* action as a federal employee, the court lacks jurisdiction over this case.").

As discussed below, Plaintiff's Complaint fails to allege a *Bivens* claim on its face to invoke this Court's jurisdiction.

*Bivens* is a limited cause of action providing a claim for relief against federal officers acting under color of federal law alleged to have acted unconstitutionally. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). And while this Court has subject matter jurisdiction over a properly stated *Bivens* claim, *see* 28 U.S.C. § 1331, Plaintiff's allegations fail to fall within its reach. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).

"*Bivens* claims are currently limited to three situations: 1) a Fourth Amendment claim against federal narcotics agents for an illegal seizure, 2) a Fifth Amendment claim against a member of Congress for sex discrimination, and 3) an Eighth Amendment claim against prison officials for inadequate medical care." *Greene v. United States*, 2022 WL 13638916, at *3 (6th Cir.); *see also Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017); *see also Bivens*, 403 U.S. at 388; *Ziglar*, 582 U.S. at 131 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."); *see Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).

The Supreme Court has advised against extending *Bivens* beyond its previously established bounds. When assessing whether to expand *Bivens*, a district court must first determine whether the case before it presents a new context—i.e. whether it is "meaningfully different from the three cases in which the [Supreme] Court has implied a damages action." *Egbert v. Boule*, 596 U.S. 482,

492 (2022). Second, if the context is new, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.*

Plaintiff alleges Distel and Kudley violated his First Amendment right to free speech and Fifth Amendment right to equal protection. (Doc. 3, at 31). At best, this Court construes Plaintiff's First and Fifth Amendment claims, relevant to Distel and Kudley, as alleged deprivation of postal services in retaliation for his speech, actions, and activism. *See* Doc. 17, at 12–13. Without tackling the merits of such claims, this Court can easily find they meaningfully differ from the three recognized contexts discussed above.

As to Plaintiff's First Amendment claim, this Court need not contemplate its context. The Supreme Court has specifically counseled against recognizing a *Bivens* remedy for First Amendment retaliation claims. *See Egbert*, 596 U.S. at 499 ("Recognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.' Extending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing such costs." (alteration in original) (internal citation omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987))); *see also Bush v. Lucas*, 462 U.S. 367, 387–89 (1983) (holding a First Amendment retaliation claim not cognizable under *Bivens*).

As to Plaintiff's Fifth Amendment claim, while *Bivens* has been recognized as a remedy to redress a violation of equal protection under the Fifth Amendment's Due Process Clause, it has only been done so in the context of a wrongful termination from federal employment based on gender discrimination. *See Davis v. Passman*, 442 U.S. 228 (1979). The instant case presents an entirely new context. *See Ziglar*, 528 U.S. at 139–40 ("If the case is different in a meaningful way

11

from previous *Bivens* cases decided by this Court, then the context is new."). And other courts within the Sixth Circuit have routinely declined to extend *Bivens* under the Fifth Amendment's equal protection component in new contexts. *See, e.g.*, *Harris v. Fed. Bureau of Prisons*, 2020 WL 7586968 (6th Cir.) (declining to extend *Bivens* to prisoner's "right-to-marry" claim brought under the equal protection component of the Fifth Amendment's due process clause); *Zelaya v. Hammer*, 516 F. Supp. 3d 778, 796 (E.D. Tenn. 2021) (declining to extend a *Bivens* remedy to plaintiffs' race-based equal protection claim under the Fifth Amendment); *Banks v. LaRose*, 2018 WL 1942195, at *3 (N.D. Ohio) (declining to extend a *Bivens* remedy to plaintiff's equal protection claim based on the classification of prisoners in segregation versus those held in the general prison population).

Plaintiff argues he "is NOT seeking to 'expand Bivens' but merely proclaim that the right to unimpeded use of the post office is a Free Speech right and when violated . . . invokes the power to sue under Bivens." (Doc. 17, at 12). Such an attempt *is* seeking to expand *Bivens*, as his claims present no meaningful similarity to the three limited situations in which a *Bivens* remedy is recognized. *See, e.g.*, *Greene*, 2022 WL 13638916, at *3.

As to the second step, the Court considers "special factors" that counsel against extending *Bivens*. One such special factor is the availability of *any* alternative, existing process to protect Plaintiff's interest. *Ziglar*, 582 U.S. at 137. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 582 U. S. at 137). And an alternative process for filing grievances against postal service employees already exists. *See, e.g.*, *Wozar v. Campbell*, 736 F. Supp. 3d 179, 201 (D. Conn. 2025) (finding two alternative remedies available to plaintiff where postal employees called police after peaceful protest, including: "(1)

12

filing a grievance with the Office of the Inspector General for the United States Postal Service to report employee misconduct, and (2) filing an action under the Federal Tort Claims Act."); *see also* Office of Inspector General, *File an Online Complaint*, https://hotlineform.uspsoig.gov/en-US/ (last visited March 13, 2026). Thus, there is "reason to think that Congress might be better equipped to create a damages remedy," and this Court must decline to extend a *Bivens* remedy to either of Plaintiff's remaining claims. *Egbert*, 596 U.S. at 492.

Because *Bivens* does not extend to provide a remedy for Plaintiff's First or Fifth Amendment claims, this Court lacks jurisdiction over either. *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 884 (6th Cir. 2021) ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there."); *see also Anderson v. Memphis Union Mission*, 2023 WL 2429496, at *2 (W.D. Tenn.) ("True enough, *Bivens* allows a plaintiff to recover for deprivations of a right secured by the federal constitution or laws of the United States by a person acting under color of federal law. But *Bivens* does not extend to alleged First Amendment or Fourteenth Amendment violations. The Court therefore dismisses Plaintiff's federal law claims against the Federal Defendants for lack of jurisdiction.") (citation modified). As such, Plaintiff's claims against Distel and Kudley are dismissed.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion to Convert (Doc. 12) be, and the same hereby is, GRANTED in part to the extent is seeks to dismiss Defendants Danbury Township, Michael Scherer, United States of America, and David Kasulones and DENIED in all other respects; and it is

13

FURTHER ORDERED that Federal Defendants' Motion to Dismiss (Doc. 11), be and the same hereby is, GRANTED to the extent it seeks dismissal of the claims against Defendants Barbara Distel and Marc Kudley; and it is

FURTHER ORDERED that the Local Defendants' Motion to Dismiss (Doc. 9), be and the same hereby is, DENIED as moot.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 23, 2026

14